# In the United States Court of Federal Claims

No. 20-577C
(Filed:  July 31, 2020)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| DOUBLE LION UCHET EXPRESS TRUST et al., | * <br> * <br> * |
| Plaintiffs, | * <br> * |
| v. | * <br> * |
| THE UNITED STATES, | * <br> * |
| Defendant. | * |

Pro Se Plaintiffs; Motion to Dismiss; Subject Matter Jurisdiction; RCFC 12(b)(1); In Forma Pauperis

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Ra Nu Ra Khuti Amen Bey and Delma Andrews-Powley, Tampa, FL, pro se.

Sosun Bae, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Chief Judge

Plaintiffs Double Lion Uchet Express Trust ("Double Lion"), Ra Nu Ra Khuti Amen Bey,[1] and Delma Andrews-Powley,[2] proceeding pro se in this matter, allege that a bank unlawfully foreclosed on their property.[3]  As a result, plaintiffs assert that they have suffered a number of "negligence tort[s]; intentional tort[s]; and strict liability tort[s]."  Compl. 8.  Plaintiffs have also filed an application to proceed in forma pauperis and a "Motion / Affidavit for Adverse Judgment" ("motion for judgment").  Currently before the court is defendant's motion to dismiss

---

[1]  Mr. Bey is also known as Bertram Andrews-Powley, III.

[2]  Plaintiffs describe Double Lion as a trust organized under Florida Law; Mr. Bey and Ms. Andrews-Powley are identified as executors and authorized representatives of that trust.

[3]  Plaintiffs' initial filing contained a variety of documents with separate captions and signature pages, including a notice of directly related cases, Compl. 277-85; two "Motion[s] for Summary Judgment," id. at 318-22, 328-32; four "Notice[s] of Request for Entering Judgment," id. at 300-17, 323-27; and a "Notice of Waiver of Tort," id. at 333-44.  The Clerk's Office docketed these documents as an attachment to the complaint, and the court will reference them according to their page numbers in that combined document.  Having reviewed each document separately, the court concludes that considering them as separate motions would have no impact on the outcome of the case.

for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). As explained below, the court grants defendant's motion, denies plaintiffs' motion for judgment, and denies plaintiffs' application to proceed in forma pauperis.

## I. BACKGROUND

Plaintiffs state that they have suffered injuries under a long list of legal authorities, including the United States Constitution; the 1787 Treaty of Peace and Friendship Between the United States of America, and His Imperial Majesty the Emperor of Morocco ("Treaty of Peace and Friendship"); the 1848 Treaty of Guadalupe Hidalgo; the Federal Tort Claims Act ("FTCA"); the Administrative Procedure Act; 42 U.S.C. §§ 1981-1983, 1985-1986;[4] 18 U.S.C. § 241;[5] and Executive Order 13,818.[6] The specific injuries plaintiffs allege, and how those injuries relate to these sources of law, are less clear. In short, plaintiffs assert that a bank foreclosure of their property was unlawful. Following a lengthy discussion of previous litigation related to the foreclosure of their property, plaintiffs indicate that they seek "reversal of the state and district court." Compl. 41; see also id. at 76-252 (providing copies of orders, filings, and docketing information related to proceedings in other courts). As a result of this unlawful foreclosure, plaintiffs claim that they have suffered a number of negligent, intentional, and strict-liability torts, as well as civil rights violations such as denial of due process. The complaint lists a wide variety of entities as "defendants," including private individuals, state court judges, federal district court judges, federal bankruptcy court judges, and officers of various banks and loan servicing entities.

In addition, throughout their complaint, plaintiffs make vague allusions to concepts associated with Moorish sovereign citizens or similar movements. They assert, for instance:

> As living physical biological, sentient beings we are real and we exist on as aspects of existence. The system, on the other hand, is an abstract creation of the mind. As investors in the bankrupt corporation called the United States, as well as the USA, the parent corporation, we, as real people, are the true creditors and source of wealth, as such, we are exempt from taxation from the public side. We are not contractally amalgamated nor are our ens-legis' amalgamated into the court's jurisdiction.

---

[4] These sections provide a number of civil rights protections, including civil remedies for certain civil rights violations. 42 U.S.C. §§ 1981-1983, 1985-1986 (2018).

[5] This section, labeled "conspiracy against rights," provides criminal penalties for certain civil rights violations. 18 U.S.C. § 241 (2018).

[6] Executive Order 13,818 concerns restrictions on property held by human rights abusers. Exec. Order 13,818, 82 Fed. Reg. 60,839 (Dec. 20, 2017).

Id. at 40; see also id. at 51-52 (asserting that "[i]n the context of International law the Washitaw has established itself as a sovereign independent nation"), 55 (using the heading "THE MOORISH NATIONAL REPUBLIC" and "THE MOORISH DIVINE AND NATIONAL MOVEMENT OF AMERICA"), 346 (asserting that "Muurs cannot be indigent, insolvent nor UNITED STATES CITIZENS"). Taken together, these features suggest an effort by plaintiffs to associate themselves with the movement and its legal tenets. See generally Bey v. State, 847 F.3d 559, 560-61 (7th Cir. 2017) (extensively chronicling the historical heritage and legal efforts of the movement). It is not immediately clear how these concepts relate to the relief plaintiffs seek.

Plaintiffs also indicate that this matter is directly related to Amen Bey v. United States, which was dismissed for failure to prosecute. No. 17-617C, slip op. (Fed. Cl. Oct. 30, 2017). Mr. Bey was the lone plaintiff in that matter, but plaintiffs do not explain the relationship between the two cases.

On June 9, 2020, plaintiffs followed up their complaint with a motion for judgment, in which they allege that defendant failed to respond to the complaint in a timely manner and that judgment should therefore be entered in their favor. Defendant filed a response to this filing, along with a motion to dismiss, on June 22, 2020. After correctly noting that it had responded to plaintiffs' complaint well before the expiration of the sixty days allotted for the purpose by RCFC 12(a)(1)(A), defendant urges the court to dismiss the complaint for lack of subject matter jurisdiction on a number of independent grounds. Plaintiffs did not file a response to defendant's motion.

## II. LEGAL STANDARDS

### A. Pro Se Plaintiffs

Pro se pleadings are "held to less stringent standards than formal pleadings drafted by lawyers" and are "to be liberally construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). However, the "leniency afforded to a pro se litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." Minehan v. United States, 75 Fed. Cl. 249, 253 (2007); accord Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995) ("The fact that [the plaintiff] acted pro se in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be."). In other words, a pro se plaintiff is not excused from his burden of proving, by a preponderance of evidence, that the court possesses jurisdiction. See Banks v. United States, 741 F.3d 1268, 1277 (Fed. Cir. 2014) (citing Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988)).

### B. Subject Matter Jurisdiction

Whether the court possesses jurisdiction to decide the merits of a case is a "threshold matter." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). Subject matter jurisdiction cannot be waived or forfeited because it "involves a court's power to hear a case."

United States v. Cotton, 535 U.S. 625, 630 (2002). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall) 506, 514 (1868). Therefore, it is "an inflexible threshold matter that must be considered before proceeding to evaluate the merits of a case." Matthews v. United States, 72 Fed. Cl. 274, 278 (2006); accord K-Con Bldg. Sys., Inc. v. United States, 778 F.3d 1000, 1004-05 (Fed. Cir. 2015). Either party, or the court sua sponte, may challenge the court's subject matter jurisdiction at any time. Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006); see also Jeun v. United States, 128 Fed. Cl. 203, 209-10 (2016) (collecting cases).

In determining whether subject matter jurisdiction exists, the court generally "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). With respect to a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, that the court possesses subject matter jurisdiction. Id. If the court finds that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

## C. The Tucker Act

The ability of the United States Court of Federal Claims ("Court of Federal Claims") to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). The waiver of immunity "may not be inferred, but must be unequivocally expressed." United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003) (internal quotation marks omitted).

The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States, not sounding in tort, that are founded upon the United States Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1) (2018); White Mountain, 537 U.S. at 472. However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 398 (1976). Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States." James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998).

## III. DISCUSSION

Plaintiffs' meandering complaint makes a wide variety of allegations, against a wide variety of parties. The court, however, can find no basis on which to exercise jurisdiction over any of them.

## A.  The United States Is the Only Proper Defendant in the Court of Federal Claims

The long list of defendants identified in plaintiffs' complaint presents a critical jurisdictional flaw:  in the Court of Federal Claims, "the only proper defendant . . . is the United States, not its officers, nor any other individual."  Stephenson v. United States, 58 Fed. Cl. 186, 190 (2003); accord RCFC 10(a).  Because "the United States itself" is the only proper defendant in the Court of Federal Claims, this court lacks jurisdiction "over any claims alleged against states, localities, state and local government entities, or state and local government officials and employees."  Anderson v. United States, 117 Fed. Cl. 330, 331 (2014).  In other words, "if the relief sought [in the Court of Federal Claims] is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court."  Sherwood, 312 U.S. at 588.

This jurisdictional flaw alone disposes of most, if not all, of plaintiffs' claims.  Although plaintiffs identify the "UNITED STATES INCORPORATED" as one of the defendants in this matter, Compl. 2, they seem to direct the bulk of their grievances at the state officials, federal officials, private individuals, and private entities supposedly responsible for the foreclosure of their property.  The court decidedly lacks the power to adjudicate such claims.  Accord Stump v. Sparkman, 435 U.S. 349, 355-56 (1978) (observing that federal judges are immune from suit when the judge had the authority to act "at the time [the judge] took the challenged action"); Brown v. United States, 105 F.3d 621, 624 (Fed. Cir. 1997) ("The Tucker Act grants the Court of Federal Claims jurisdiction over suits against the United States, not against individual federal officials.").

## B.  The Court of Federal Claims Lacks Jurisdiction to Review the Decisions of State and Federal Courts

In addition, many of plaintiffs' grievances seem directed at past decisions of other courts.  However, the Court of Federal Claims is not an appellate tribunal—it "does not have jurisdiction to review the decisions of state courts, federal bankruptcy courts, federal district courts, or federal circuit courts of appeals."  Mora v. United States, 118 Fed. Cl. 713, 716 (2014); accord Joshua v. United States, 17 F.3d 378, 380 (Fed. Cir. 1994) ("[T]he Court of Federal Claims does not have jurisdiction to review the decisions of district courts or the clerks of district courts relating to proceedings before those courts.").  Plaintiffs' only recourse in the wake of these decisions was to exhaust the appellate remedies available to them; their current attempts to collaterally attack these judgments, circumventing the normal appellate process, are not permitted.  Thus, the court has no jurisdiction to review the state and federal court decisions that plaintiffs ask it to reverse.

## C.  The Court of Federal Claims Lacks Jurisdiction to Entertain Plaintiffs' Substantive Claims

To the extent that plaintiffs are asserting claims against the United States, they have failed to identify a "separate source of substantive law that creates the right to money damages."  Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc portion).  Similarly,

plaintiffs point to no express or implied contract with the United States that might support the relief they claim.[7]

Rather, plaintiffs ask the court to adjudicate claims in substantive areas of law over which the court unquestionably lacks jurisdiction.  First, the Court of Federal Claims may not adjudicate claims sounding in tort.  Under the FTCA, jurisdiction over tort claims against the United States lies exclusively in federal district courts.  U.S. Marine, Inc. v. United States, 722 F.3d 1360, 1365-66 (Fed. Cir. 2013).  The Court of Federal Claims is not a federal district court. Ledford v. United States, 297 F.3d 1378, 1382 (Fed. Cir. 2002); see also Lightfoot v. Cendant Mortg. Corp., 137 S. Ct. 553, 563 (2017) (distinguishing between the "Court of Federal Claims" and "federal district courts").  Therefore, "[w]here the adjudication of a type of claim has been granted to the district courts exclusively, [the Court of Federal Claims] has no jurisdiction to hear the case and must dismiss the matter."  Ross v. United States, 122 Fed. Cl. 343, 348 (2015). Although plaintiffs never clearly explain what "negligence tort[s]; intentional tort[s]; and strict liability tort[s]" they have suffered, Compl. 8, the court would be powerless to adjudicate them no matter how they were presented.

Second, the Tucker Act gives the Court of Federal Claims no jurisdiction over civil rights or due process claims.  Only federal district courts possess jurisdiction to entertain claims alleging civil rights violations.  See, e.g., Jones v. United States, 104 Fed. Cl. 92, 98 (2012) (explaining that the Court of Federal Claims has no jurisdiction over claims based on, among other causes of action, alleged "violations of . . . civil rights"); Marlin v. United States, 63 Fed. Cl. 475, 476 (2005) (explaining that claims alleging violations of 42 U.S.C. §§ 1981, 1983, and 1985 must be heard in federal district courts).  Similarly, binding precedent has long confirmed the court's lack of jurisdiction over due process injuries.  Accord LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (emphasizing that the Due Process Clauses of the Fifth and Fourteenth Amendments are not money-mandating).  To the extent that plaintiffs assert violations of 42 U.S.C. §§ 1981, 1982, 1983, 1985, or 1986, or any source of due process rights, the court must leave their adjudication to an appropriate federal district court.

Third, the Court of Federal Claims has no jurisdiction over violations of the criminal code.  Harris v. United States, 868 F.3d 1376, 1381 (Fed. Cir. 2017) (per curiam) (citing Joshua, 17 F.3d at 380); Hufford v. United States, 85 Fed. Cl. 607, 608 (2009).  The federal criminal code, laid out in title 18 of the United States Code, falls squarely into this category.  Accord Kurt v. United States, 103 Fed. Cl. 384, 388 (2012).  Consequently, the court is unable to adjudicate claims arising under 18 U.S.C. § 241, a civil rights statute furnishing criminal penalties.  Accord Carter v. United States, 142 Fed. Cl. 159, 163 (2019) ("[Plaintiff] alleges violations of . . . 18 U.S.C. §§ 241, 242, but only federal district courts have jurisdiction to hear claims alleging such violations.").

_____

[7] While plaintiffs refer to a "Breach of Contract on a Government Debt Obligation held in treasury direct," Compl. 56, and a "Failure to discharge government obligations and private banker's contracts," id. at 58, in their complaint, little detail is provided regarding these supposed contracts.  Critically, plaintiffs do not seem to allege that the United States itself is a party to these contracts.

Fourth, the executive order relied upon by plaintiffs expressly provides that it "is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States . . . ." Exec. Order 13,818, § 13, 82 Fed. Reg. at 60,842. Therefore, the court lacks jurisdiction to entertain any claims based on its contents. Accord Sepehry-Fard v. United States, No. 19-560C, 2019 WL 2070746, at *2 (Fed. Cl. May 9, 2019), appeal docketed, No. 19-2018 (Fed. Cir. June 13, 2019).

Finally, the Court of Federal Claims generally lacks jurisdiction over "any claim against the United States growing out of or dependent upon any treaty entered into with foreign nations." 28 U.S.C. § 1502; see also De Archibold v. United States, 57 Fed. Cl. 29, 31 (2003) (quoting and applying 28 U.S.C. § 1502). While the Court may at times adjudicate claims grounded in Indian treaties,[8] 28 U.S.C. § 1505, this exception is not applicable here. See, e.g., Republic of New Morocco v. United States, 98 Fed. Cl. 463, 468 (2011) (explaining the court's lack of jurisdiction over violations of the Treaty of Peace and Friendship). Moreover, plaintiffs never explain how the Treaty of Peace and Friendship or the Treaty of Guadalupe Hidalgo, invoked only briefly, are implicated by the facts of this case.

## IV.  APPLICATION TO PROCEED IN FORMA PAUPERIS

As noted above, plaintiffs filed, concurrent with their complaint, an application to proceed in forma pauperis. To proceed with a civil action in this court, a plaintiff must either pay $400 in fees—a $350 filing fee plus a $50 administrative fee—or, like plaintiffs, request authorization to proceed without payment of fees by submitting a signed application to proceed in forma pauperis.[9] See 28 U.S.C. §§ 1915, 1926; RCFC 77.1(c); see also Waltner v. United States, 93 Fed. Cl. 139, 141 n.2 (2010) (concluding that 28 U.S.C. § 1915(a)(l) applies to both prisoners and nonprisoners alike). Plaintiffs wishing to proceed in forma pauperis must submit an affidavit that (1) lists all of their assets, (2) declares that they are unable to pay the fees, and (3) states the nature of the action and their belief that they are entitled to redress. 28 U.S.C. § 1915(a)(l). Evaluation of a plaintiff's ability to pay is "left to the discretion of the presiding judge, based on the information submitted by the plaintiff." Alston-Bullock v. United States, 122 Fed. Cl. 38, 45 (2015). Furthermore, a "court shall dismiss the case at any time" if the

---

[8]  The court may exercise jurisdiction over Indian treaties "because such treaties are considered contracts with the United States." Edwards v. United States, Nos. 15-580C, 15-629C, 2015 WL 6560547, at *3 (Fed. Cl. Oct. 29, 2015) (citing Tsosie v. United States, 825 F.2d 393, 401 (Fed. Cir. 1987)). Even then, the Court only has jurisdiction if the treaty "can fairly be interpreted as mandating compensation by the Federal government." Id. (quoting Holmes v. United States, 657 F.3d 1303, 1309 (Fed. Cir. 2011)).

[9]  While the Court of Federal Claims is not generally considered to be a "court of the United States" within the meaning of title 28 of the United States Code, 28 U.S.C. § 451, the court has jurisdiction to adjudicate applications to proceed in forma pauperis. See 28 U.S.C. § 2503(d) (deeming the Court of Federal Claims to be a "court of the United States" for purposes of 28 U.S.C. § 1915).

action or appeal to be filed <u>in forma pauperis</u> "is frivolous or malicious."  28 U.S.C.
§ 1915(e)(2)(B)(i).  Unlike a motion to dismiss for failure to state a claim, which requires the
court to assume the truth of allegations in the complaint, § 1915(e)(2)(B)(i) gives courts "the
unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims
whose factual contentions are clearly baseless."  <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989).

Although plaintiffs' affidavit generally complies with the documentation requirements of
§ 1915(a)(l), the claims themselves are frivolous.  Plaintiffs initiated this case by filing over 300
pages of repetitive, disjointed, incoherent allegations.  After carefully attempting to parse each
allegation, the court concludes that no part of the complaint is grounded in factual and legal
reality.  <u>Accord id.</u> at 325.  "There is no duty on the part of the trial court . . . to create a claim
which [the plaintiff] has not spelled out in his pleading," <u>Scogin v. United States</u>, 33 Fed. Cl.
285, 293 (1995) (quoting <u>Clark v. Nat'l Travelers Life Ins. Co.</u>, 518 F.2d 1167, 1169 (6th Cir.
1975)), and the court finds no reason to do so here.

The sovereign citizen concepts espoused in the complaint only serve to make its
frivolousness more apparent.  The federal court system in general, and the Court of Federal
Claims in particular, have become well acquainted with the sovereign citizen movement over the
past few decades.  Typically, sovereign citizens maintain that "they are not subject to federal
government authority and employ various tactics in an attempt to, among other acts, avoid
paying taxes, extinguish debts, and derail criminal proceedings."  <u>Walby v. United States</u>, 144
Fed. Cl. 1, 3 (2019), <u>aff'd</u>, 957 F.3d 1295 (Fed. Cir. 2020).  Moorish sovereign citizens, more
specifically, claim to be "sovereign citizens by virtue of their alleged Moorish origin."  <u>Bey</u>, 847
F.3d at 560.  Adherents of this movement

> build[] on their alleged ancestry in ancient Moors (and/or on their alleged or
> actual adhesion to Moorish religious convictions) for the purposes of . . . initiating
> frivolous legal actions on the grounds of their self-granted "diplomatic
> immunity," which these individuals deduce either from their self-granted
> "Moorish citizenship" and from their correspondingly-produced homemade
> "Moorish" documents . . . or from a multitude of other, equally non-cognizable
> under the law, bases, which these individuals keep creating in order to support
> their allegations of "diplomatic immunity."

<u>Murakush Caliphate of Amexem Inc. v. New Jersey</u>, 790 F. Supp. 2d 241, 245 (D.N.J. 2011).  In
short, these individuals "attempt to benefit from the protections of federal and state law while
simultaneously proclaiming their independence from and total lack of responsibility under those
same laws."  <u>El-Bey v. United States</u>, No. 1:08CV151, 2009 WL 1019999, at *1 (M.D.N.C. Jan.
26, 2009).

This court has consistently recognized that "[t]he Tucker Act precludes sovereign citizen
claims."  <u>Davenport v. United States</u>, No. 17-1122C, 2017 WL 5988354, at *2 (Fed. Cl. Dec. 4,
2017).  But this brief jurisdictional statement belies the vehemence with which the Court of
Federal Claims and other federal courts have rejected the movement's legal contentions.  <u>See,
e.g.</u>, <u>United States v. Sterling</u>, 738 F.3d 228, 233 n.1 (11th Cir. 2013) (noting that courts

routinely reject sovereign citizen legal theories as "frivolous"); Gravatt v. United States, 100 Fed. Cl. 279, 288 (2011) (deeming a plaintiff's sovereign citizen claim frivolous because his "factual allegations are nonsensical"); Bechard v. United States, No. 16-1177C, 2017 WL 486946, at *4 (Fed. Cl. Feb. 6, 2017) (concluding that a plaintiff's sovereign citizen claims "'lack[] an arguable basis either in law or in fact' and are therefore frivolous") (quoting Neitzke, 490 U.S. at 325). This stance holds true for the sovereign citizen claims that some litigants have intertwined with Moorish concepts. See, e.g., Murakush Caliphate, 790 F. Supp. 2d at 257-68 (documenting the abusive litigation practices and "frivolous submissions" of certain Moorish sovereign citizen claimants); Hampton v. City of Durham, No. 1:10CV706, 2010 WL 3785538, at *2-3 (M.D.N.C. Sept. 22, 2010) ("Any claims or arguments raised by Plaintiff which are based on his membership in the Moorish American Nation are [by definition] frivolous."). After reviewing the sovereign citizen language employed by plaintiffs, the court concludes that this case merits the same treatment. Thus, to the extent that plaintiffs base any of their claims on Moorish sovereign citizen concepts, the court deems those claims frivolous.

Because the court has determined that plaintiffs' claims are frivolous, § 1915(e)(2)(B)(i) provides it with an additional, independent reason to dismiss the complaint. Accord Johnson v. United States, No. 15-578, 2015 WL 1793616, at *1 (D.D.C. Apr. 13, 2015) (dismissing a claim under § 1915(e)(2)(B)(i) because the complaint "consist[ed] in large part of incoherent and disjointed statements and general proclamations"). To the extent that any of plaintiffs' claims survived the court's above jurisdictional inquiry, the court dismisses them now. Moreover, "[t]he text of the statute requires that the court deny an in forma pauperis application if, in connection with or prior to ruling on the application, the court finds the case is frivolous." Manning v. United States, 123 Fed. Cl. 679, 683 (2015); see also Floyd v. United States, 125 Fed. Cl. 183, 192 (2016) (finding the plaintiff's claims frivolous and, as a result, denying his application to proceed in forma pauperis). The claims' frivolousness thus leads the court to deny plaintiffs' in forma pauperis application as well.

## V. CONCLUSION

Plaintiffs allege no nonfrivolous claims over which this court has jurisdiction. Accordingly, the court **GRANTS** defendant's timely filed motion to dismiss. Plaintiffs' complaint is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. In addition, the court **DENIES** plaintiffs' motion for judgment and application to proceed in forma pauperis. No costs. The clerk is directed to enter judgment accordingly.

The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith because, as alleged, plaintiffs' claims are clearly beyond the subject matter jurisdiction of this court.

**IT IS SO ORDERED.**

MARGARET M. SWEENEY
Chief Judge